**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LEWIS L. FULWILEY,**

    **Plaintiff,**

                              **Civil Action 2:19-cv-4995**
    **v.**                            **Chief Judge Algenon L. Marbley**
                              **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits. This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF Nos. 10, 12). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and **REMAND** this case for rehearing pursuant to Sentence 4 of § 405(g).

### I.    PROCEDURAL HISTORY

Plaintiff protectively filed his application on February 22, 2016, alleging that he became disabled on July 20, 1995. (R. at 279–84.) Plaintiff's application was denied initially on April 22, 2016, and upon reconsideration on September 1, 2016. (R. at 203–12, 213–24.) A video hearing was held on July 25, 2018, before an Administrative Law Judge ("ALJ"), who issued an unfavorable determination on October 9, 2018. (R. at 177–202.) The Appeals Council declined to review that unfavorable determination, and thus, it became the Commissioner's final

determination.  (R. at 1–7.)  Plaintiff seeks judicial review of that final determination in this action.

Plaintiff alleges that the ALJ committed reversible error by failing to find that his depression constituted a severe impairment and that, relatedly, this failure caused the ALJ to err when weighing the medical opinion from his treating psychologist.  Specifically, Plaintiff contends that the ALJ erred by finding that his depression did not constitute a severe impairment solely because it did not meet the durational requirement (i.e., it did not last or was not expected to last for a continuous period of at least 12 months) and that the ALJ's analysis of his treating psychologist's opinion incorporated that erroneous finding.  The Commissioner asserts that Plaintiff's claim is without merit.

## II.     THE ALJ's DECISION

On August 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 44–50.)  At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged date of onset, April 28, 2016.  (R. at 46.)  At step two, the ALJ found that Plaintiff had the following severe impairments: congestive heart failure and hypertension.  (*Id.*)  In addition, the ALJ found that although Plaintiff's depression and alcohol abuse constituted medically determinable impairments, neither impairment, considered singly and in combination, were severe.  (R. at 47.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  At step four, the ALJ concluded

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that Plaintiff had the residual functional capacity[2] ("RFC") to perform a full range of sedentary work as defined in 20 C.F.R. 416.967(a). (*Id*.)

When assessing that RFC, the ALJ considered the record evidence, including medical opinion evidence. (R. at 49.) The ALJ gave "some" weight to the opinions from Plaintiff's treating psychologist and to the opinions from state examining physicians. (*Id*.) At step five of the sequential process, the ALJ noted that Plaintiff did not have past relevant work. (*Id*.) The ALJ further concluded that based on Plaintiff's ability to perform a full range of sedentary work, and Plaintiff's age, education, and work experience, he was not disabled under the Social Security Act. (*Id.* at 50.)

### III. RELEVANT RECORD EVIDENCE[3]

#### A. Plaintiff's Testimony

Plaintiff testified that his depression made him feel down all the time and like he did not want to be bothered. (R. at 194.) Plaintiff further testified that he had crying spells when he thought of his Grandparents. (R. at 198–99.) Plaintiff stated that sometimes he did not want to eat but that sometimes he could eat a little. (R. at 199.) Plaintiff indicated that he treated with Dr. Gary Wolfgang for his depression issues and that he had treated with Dr. Wolfgang four or five times. (R. at 193.) Plaintiff indicated that Dr. Wolfgang advised him to take walks and practice communicating with others. (*Id*.) Plaintiff also indicated that he was prescribed Prozac

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite her limitations." 20 C.F.R. § 4040.1545(a)(1).

[3] Plaintiff's allegations of error pertain only to his mental health impairment of depression. Accordingly, the undersigned's discussion is limited to that issue.

4

for his depression, but that Dr. Wolfgang thought his prescription should be increased. (R. at 198.)

      **B.**      **Medical Records Related to Plaintiff's Depression**

The medical records indicate that Plaintiff's scores on depression screens in 2016 and 2017 indicated that he did not suffer from depression. (R. at 585, 626, 629, 635.) The records also reflect that during this period, healthcare providers routinely noted that Plaintiff was "negative" for psychological symptoms during system reviews and that their examinations routinely revealed that Plaintiff's affect, mood, and judgment were normal (R. at 435–36, 431, 427, 592, 597, 574–75, 678–79.) Similarly, at examinations during this period, Plaintiff's mood, affect, judgment, behavior, and thought content were normal. (R. at 586, 627, 630, 636, 637, 643, 736.)

At a January 18, 2018 office visit at Muskingham Valley Health Center ("MVHC"), however, Plaintiff reported to Nurse Practitioner Tina McCullough that he was constantly tired and he did not know if that tiredness was related to sleep apnea or depression. (R. at 659.) Plaintiff additionally reported that he felt "out of sorts" all the time and experienced low motivation that had worsened since winter started. (R. at 660.) Plaintiff stated that he had never taken any medications for these issues. (*Id.*) During a review of symptoms, Plaintiff endorsed a dysphoric mood but denied suicidal ideas. (*Id.*) Plaintiff's scores on a depression screen indicated that he was moderately depressed. (*Id.*) Although Plaintiff's mood, affect, behavior, judgment, and thought content were all normal, he was diagnosed with depression of an unspecified type, prescribed 10 milligrams of Lexapro daily, and was instructed to return in one month for his depression. (R. at 661–62.)

Notes from NP McCullough dated February 26, 2018, indicate that Plaintiff presented on that date with depressed mood, difficulty concentrating, fatigue, impaired memory, and insomnia. (R. at 664.) Plaintiff reported that he did not believe that the Lexapro was helping him, he felt no effects from it, and his mood was the same. (*Id*.) Plaintiff again endorsed a dysphoric mood and that he was nervous and anxious and his scores on a depression screen indicated that he was mildly depressed. (*Id*.) Although an examination again revealed that Plaintiff's mood, affect, behavior, judgment, and thought content were all normal; he was diagnosed with depression of an unspecified type; his Lexapro was discontinued; he was prescribed 10 milligrams of Prozac daily; and he was instructed to return in three months for his depression. (R. at 665–67.)

The records indicate that Plaintiff sought treatment from psychologist Gary Wolfgang, Ph.D, on May 21, 2018, before returning to see NP McCullough at MVMC on June 6, 2018. (R. at 754, 668.) NP McCullough wrote that at the June 6, 2018 appointment, Plaintiff reported that he had poor sleep and appetite, the Prozac was helping somewhat with his depression, and that Dr. Wolfgang had suggested that his Prozac dosage be increased. (R. at 668.) Plaintiff's depression screen scores indicated that he was moderately severely depressed. (*Id*.) He again endorsed a dysphoric mood and that he was nervous and anxious. (R. at 670.) Upon examination, however, Plaintiff's mood, affect, behavior, judgment, and thought content were all normal. (*Id*.) Although Plaintiff was not diagnosed with depression at this visit, his Prozac was increased to 20 milligrams daily and he was instructed to return in three months or if his symptoms worsened or failed to improve. (R. at 671.)

Plaintiff treated again with Dr. Wolfgang on June 7, 2018, June 21, 2018, and July 3, 2018. (R. at 754–55.) In a letter to Plaintiff's counsel summarizing his treatment records, Dr.

6

Wolfgang wrote that Plaintiff had presented with symptoms of major depression that was of moderate severity. (*Id*.) He indicated that Plaintiff was lethargic, sad, hopeless, helpless, pessimistic, and discouraged; that Plaintiff had lowered energy; and that Plaintiff lacked motivation and the wherewithal to exercise as advised by his medical doctors. (*Id*.) Dr. Wolfgang further indicated that Plaintiff had withdrawn from most relationships and activities to a considerable extent. (*Id*.)  Dr. Wolfgang explained that cognitive behavioral therapy had not assisted Plaintiff but that he had not yet been prescribed an anti-depressant and that he intended to recommend that Plaintiff consult his medical doctor about that possibility at their next visit. (*Id*.)  Dr. Wolfgang also explained that he had consulted with Plaintiff's medical providers and reviewed medical notes and that they indicated that Plaintiff was substantially limited in his ability to work from his medical symptoms and that Plaintiff would reportedly be unable to perform the functions of a job that required very much at all in the way of physical activity. (*Id*.) Dr. Wolfgang wrote that in his opinion, Plaintiff's "depressive symptoms significantly add to the difficulties he already experiences relative to his ability to work . . . ."; that Plaintiff's energy and stamina were significantly reduced by his physical symptoms and that his "depression adds to this difficulty to a severe marked extent at this time." (*Id*.)  Dr. Wolfgang noted, however, that it was "difficult to know . . . how much this would change with antidepressant medications, as is planned for the near future." (*Id*.)  Dr. Wolfgang wrote too that he had tested Plaintiff, and Plaintiff had scored in the mild range of intellectual impairment and that this added to the "level of [Plaintiff's] employment difficulties." (*Id*.)  Dr. Wolfgang also noted that Plaintiff had a history of learning disabilities and special education class placement. (*Id*.)

Plaintiff sought treatment from Southeastern Ohio Medical Center in July 2018 for hypertension issues. On July 16, 2018, Plaintiff reported no psychiatric symptoms, and his mood

7

and affect were both normal.  (R. at 1701, 1702, 1711.)  Plaintiff's mood and affect were again normal on July 17, 2018 (R. at 1715), and his mood, affect, and judgment were all normal on July 20, 2018. (R. at 1558, 1930.)

The ALJ issued his determination denying Plaintiff's application for benefits on October 9, 2018.  (R. at 44–51.)  After that determination was issued, Plaintiff submitted additional medical records to the Appeals Council for treatment that Plaintiff had received prior to the ALJ's determination.  Those records indicate that on July 30, 2018, and August 29, 2018, Plaintiff was negative for psychological symptoms on a review of systems.  (R. at 172, 168.)  On August 30, 2018, Plaintiff's scores on a depression screen indicated that he was suffering mild depression.  (R. at 147.)  On September 12, 2018, Plaintiff reported to NP McCullough at MVHC that his depression was "somewhat controlled" with his Prozac; that it had helped "a little at first" but that it was not working lately; and that he wanted his Prozac increased if possible.  (R. at 70.)  Although Plaintiff endorsed a dysphoric mood and that he was nervous and anxious on that date, his mood, affect, behavior, judgment, and thought content were all normal.  (R. at 72.)  Plaintiff's scores on a depression screen also indicated that he had no depression.  (R. at 71.)  Plaintiff was nevertheless diagnosed with moderate episode of major depressive disorder without prior episode, his Prozac was increased to 40 milligrams daily, and he was instructed to return in three months or if his symptoms worsened or failed to improve.  (R. at 73–74.)  The Appeals Council did not make any of these records exhibits because they did not show a reasonable probability that they would have changed the outcome of the ALJ's decision.  (R. at 2.)

Plaintiff also submitted to the Appeals Council medical records that reflected treatment he received after the ALJ issued his October 9, 2018 determination.  Those records indicate that

on October 18, 2018, Plaintiff reported that his mood was good and that he rated his depression symptoms as a 6 on a 10-point scale.  (R. at 147.)  An examination on October 29, 2018, revealed that Plaintiff's mood, affect, and thought content were all normal.  (R. at 24.)  On December 12, 2018, NP McCullough wrote that Plaintiff reported that his depression was "somewhat managed" with his Prozac but that he complained that it had strange effects on his body, that he experienced fatigue, and that it made him feel "funny in the head."  (R. at 10.)  Plaintiff endorsed a dysphoric mood and that he was nervous and anxious, but upon examination his mood, affect, behavior, judgment, and thought content were all normal.  (R. at 11–12.)  Plaintiff's scores on a depression screen also indicated that he had no depression.  (R. at 11.)  Nevertheless, Plaintiff was diagnosed with reactive depression, his Prozac was discontinued, and he was prescribed 10 milligrams of Lexapro daily.  (R. 12–14.)  The Appeals Council did not make these records exhibits because the ALJ's determination decided Plaintiff's case through October 9, 2018, and these records fell outside that period.  (R. at 2.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take 'into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously noted, Plaintiff contends that the ALJ committed reversible when finding that his depression did not constitute a severe impairment solely because his depression was of insufficient duration.[4] The undersigned agrees.

At step two of the sequential evaluation, an ALJ considers the "medical severity" of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). When assessing the severity of a mental impairment, like depression, an ALJ must follow a special technique. 20

---

[4] Neither party disputes whether Plaintiff's depression was a medically determinable impairment.

10

C.F.R. §404.1520(a); *Brooks v. Comm'r of Soc. Sec*. 531 F. App'x 636, 641 (6th Cir. 2013.) Specifically, an ALJ must rate the degree of a claimant's functional limitation in four broad areas: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The ALJ must rate a claimant in these four areas using a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the degree of the claimant's limitations are rated as "' none' or 'mild,'" the ALJ will generally conclude that a claimant's impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities . . . . " 20 C.F.R. § 404.1520a(d)(1).

In addition, before a claim can proceed from step two to step three, an ALJ must find that a severe impairment meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). The duration requirement, found at 20 C.F.R. § 404.1509, provides that "[u]nless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months." "Where the claimant is applying for DIB, 'the 12-month period may be any period of 12 months, so long as the period starts prior to the expiration of the claimant's insured status. The only requirement is that the 12 months must be consecutive.'" *Bentschneider v. Comm'r of Soc. Sec.*, No. CV 16-12038, 2017 WL 1505120, at *5 (E.D. Mich. Apr. 7, 2017), *report and recommendation adopted*, No. 16-CV-12038, 2017 WL 1476900 (E.D. Mich. Apr. 25, 2017) (quoting Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 2:6 (2017 ed.)); *see also Lyons v. Soc. Sec. Admin.*, No. 00-5361, 19 F. App'x 294, 300 (6th Cir. Sept. 13, 2001).

The United States Court of Appeals for the Sixth Circuit has explained that the step two inquiry is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Accordingly, a claimant's burden at step two is "a *de minimis* hurdle in the disability determination process" requiring a claimant to show only that an impairment has more than a minimal impact on his ability to perform work-related functions. *Id*. at 862. Still, an impairment must be both severe and of sufficient duration or there will be a finding of non-disability. 20 C.F.R. § 404.1520(a)(4)(ii).

In this case, the ALJ discussed Plaintiff's mental impairments at step two as follows:

> The claimant's medically determinable mental impairments of depression and alcohol abuse, considered singly and in combination, do not cause more that minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. Specifically, claimant reports that his alcohol abuse disorder is in remission . . . and his depression is of recent onset such that it does not meet durational requirement for consideration . . .

(R. at 47.)

The medical evidence of record, including the scores on depression screens, indicates that Plaintiff was diagnosed with depression on January 18, 2018. (R. at 662.) The ALJ issued his determination ten months later, on October 9, 2018, and concluded that Plaintiff's depression was of insufficient duration. (R. at 50.) The ALJ, however, adjudicated Plaintiff's application before that twelve-month period could have possibly expired. Accordingly, the ALJ should have considered whether the evidence indicated that Plaintiff's depression could have been expected to last two additional months. *See Harris v. Sec'y of Health & Hum. Servs.*, No. 87–1997, 863 F.2d 48 (6th Cir. Nov. 16, 1988) (Table) (explaining that an ALJ who hears a claim before the

12

twelve-month period expires must determine whether a claimant's impairment may be expected to last for the requisite period). The ALJ did not do so.

The Commissioner asserts that the ALJ did not err because even though Plaintiff was diagnosed with depression in January 2018, that diagnosis is not sufficient to demonstrate that Plaintiff's depression caused disabling work limitations. (Def.'s Mem. in Opp'n, ECF No. 16 at 4.) The Commissioner further argues that even if January 18, 2018, is the proper starting point for the duration analysis, evidence that was not made part of the record demonstrates that Plaintiff's depression was largely controlled by December 12, 2018. (*Id*. at 5.) Both of these assertions conflate whether an impairment causes more than a minimal impact on a claimant's ability to perform work-related functions with whether an impairment is of sufficient duration. These are separate inquiries at step two. In this case, the record may well contain evidence that would have permitted the ALJ to conclude that Plaintiff's depression did not impact his ability to perform work functions. But the ALJ did not reach such a conclusion. Instead, the ALJ relied exclusively on the duration requirement. And the ALJ erred by failing to consider whether Plaintiff's depression could be expected to last for twelve months given the date of the determination.

Moreover, the undersigned cannot conclude that this error was harmless. When an ALJ determines that a claimant had a severe impairment at Step Two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's

13

argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Although the ALJ concluded that Plaintiff's depression was not severe, he also concluded that Plaintiff had other severe impairments. (R. at 46.) It is not clear, however, that the ALJ properly considered Plaintiff's nonsevere depression when assessing Plaintiff's RFC. When assessing Plaintiff's RFC, the ALJ considered Dr. Wolfgang's opinion and explicitly discussed Plaintiff's depression as follows:

> As for the opinion evidence, the claimant's treating psychologist, Dr. Gary Wolfgang, submitted a medical source statement that is given some weight . . . . Dr. Wolfgang opines that the claimant displays symptoms of moderate level of major depression as expressed through low energy, sad mood, and feelings of hopelessness. As of the time of Dr. Wolfgang's opinion, the claimant had not been responsive to treatment and Dr. Wolfgang mentions that the claimant should consult his physician regarding antidepressants. Of note, however, is that Dr. Wolfgang has only seen the claimant on four occasions, with the first consultation occurring on May 21, 2018. This treatment history is not sufficient to satisfy the durational requirements that are necessary to classify claimant's depression as a severe impairment. Dr. Wolfgang's analysis is generally not consistent with the evidence contained in the record.

(R. at 49.)

Plaintiff asserts that the ALJ's analysis of Dr. Wolfgang's opinion was tainted by his erroneous duration analysis. The undersigned agrees. The ALJ discounted Dr. Wolfgang's opinion because he began treating Plaintiff on May 21, 2018, and this history was not sufficient to satisfy the duration requirement. The ALJ thus relied on his erroneous duration analysis when weighing Dr. Wolfgang's opinion. In addition, although the ALJ also summarily concluded that Dr. Wolfgang's opinion was not consistent with the evidence contained in the record, the ALJ's

14

summary statement failed to identify and discuss what record evidence was inconsistent with Dr. Wolfgang's opinion. *Chapman v. Comm'r of Soc. Sec.*, No. 3:19-CV-00205, 2020 WL 3971402, at *3 (S.D. Ohio July 14, 2020) (citing *Hargett v. Comm'r of Soc. Sec.*, No. 19-3718, 2020 WL 3833072, at *4 (6th Cir. July 8, 2020) ("[A]n ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion.")). Consequently, the Court cannot conduct a meaningful review and determine if the ALJ considered Plaintiff's nonsevere depression when crafting Plaintiff's RFC. Indeed, it appears from this discussion that the ALJ perhaps did not consider the record evidence demonstrating that Plaintiff's depression began at least as early as January 18, 2018.

## VI. RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination **REMAND** this case under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

> /s/ *Chelsey M. Vascura*
> CHELSEY M. VASCURA
> UNITED STATES MAGISTRATE JUDGE